**PAIR et al. v. CARAWAY DRILL-
ING CO. et al.**

No. 2934.

Court of Civil Appeals of Texas.
Eastland.

May 30, 1952.

Rehearing Denied June 27, 1952.

H. J. Brice and Wayland G. Holt, Snyder,. Pollard, Reeves & Boulter, Lawrence & Lawrence, Tyler, for appellants.

James Witherspoon and John D. Aikin,. Hereford, for appellees.

GRISSOM, Chief Justice.

Caraway Drilling Company sued Roy M. Pair and O. E. Schkade on (1) a written. contract to recover $2.65 per foot for drilling an oil well and setting the oil string and (2) for the value of Caraway's services. in doing the work and furnishing the material thereafter required in an attempt to complete the well. Caraway recovered judgment for both items against Pair and for the first item against Schkade, with provision that if Schkade should be compelled to pay he should recover from Pair. Pair and Schkade have appealed. Caraway, in both its brief and oral argument, has. "waived" any recovery against Schkade.

The suit to recover for drilling and setting the oil string was based on a written contract executed only by Schkade and Caraway. Schkade Drilling Company, which was O. E. Schkade, was referred to as contractor and Caraway Drilling Company as sub-contractor. It recited that the contractor, Schkade, had undertaken to drill certain wells for Pair "hereinafter called owner

(who is not a party hereto)" on a certain lease owned by Pair in Mitchell County; that "sub-contractor (Caraway) desires to perform certain work, as hereinafter stipulated, in the drilling of said first well and, provisionally, two additional wells if requested by contractor to do so; and subject to the terms, stipulations and provisions hereinafter following * * *." It then recited that "sub-contractor", Caraway, agreed to commence drilling "Roy M. Pair No. 5" within ten days; to drill the same "in a good annd workmanlike manner to a depth of 1,600 feet, which depth shall be at the option of the contractor * * *"; that "contractor (Schkade) is to pay sub-contractor (Caraway) (A) for the drilling of said well, if duly performed in accordance herewith, the sum of * * * ($2.-65) per foot for all footage drilled and accepted, said payment to become due ten days from full performance hereunder by sub-contractor, and payable at Snyder, Texas." It further recited that the sub-contractor, Caraway, agreed to do all things "necessary and incident to the drilling of said well to the depth stated and setting the oil string"; that Caraway was to furnish all labor, material and equipment and to pay all bills; to drill said well with a rotary; to drill a straight hole, acceptable to contractor, with no portion deviating more than five degrees from vertical; to permit the "owner" (Pair) or the contractor (Schkade) to be about the well at all times and to have access to all reports, records and logs. Caraway agreed to furnish all insurance; to indemnify the contractor, Schkade, against all claims for damages resulting from Caraway's performance of the contract. The contractor, Schkade, agreed to furnish all cement and all of the expense in cementing the oil string, a road to the well and a slush pit. Tersely stated, Caraway agreed to drill the hole and set the oil string for $2.65 per foot, which Schkade agreed to pay within ten days after completion of said drilling, at Snyder.

There was evidence that, in the fall of 1948, Pair was anxious to have five wells drilled on his lease before January 1, 1949; that Pair employed Schkade to do such drilling, authorized Schkade to employ others to help him and Pair agreed to pay Schkade $3.25 for each foot drilled, whether drilled by Schkade or his employees; that Schkade, with the knowledge and consent of Pair, hired Caraway to drill a well and enter into said written contract, whereby Schkade agreed to pay Caraway $2.65 per foot for the drilling for which Pair was to pay Schkade $3.25 per foot. There is evidence that in the oral agreement between Pair and Schkade it was understood that when Caraway's drill approached the pay sand Schkade was to move his cable tools over the hole and complete the well, for which he was to be paid, in addition to the $3.25 per foot, for drilling, the customary pay for all day work.

Relative to the recovery by Caraway of a judgment against Pair for $3,892.85, which was $2.65 per foot (as agreed to by Schkade and Caraway in their written contract) for drilling and setting the oil string, Pair's main contention is that the court erred in failing (1) to instruct a verdict for Pair and (2) to render judgment non obstante veredicto, because Caraway sought judgment on the theory that Pair had adopted and ratified the written contract between Caraway annd Schkade and the evidence did not show that Pair had done so, or that Caraway had performed his contract.

At the close of Caraway's evidence, Pair presented a motion for an instructed verdict (insofar as the cause of action asserted upon the written contract was concerned, that is, for recovery of $2.65 per foot for drilling and setting the oil string, as provided in the contract between Caraway and Schkade) on the grounds that Caraway had failed to make out a case, in that, he had pleaded a cause of action on the written contract, to which Pair was not a party or in privity and which Pair was not shown to have ratified or adopted.

That part of Caraway's petition which attempted to allege grounds for recovery of $2.65 per foot for drilling and setting the oil string was based solely on the contention that Pair had adopted and ratified the written contract between Schkade and Caraway and, thereby, became jointly obligated with Schkade "under the terms of the contract." Some issues were submitted which might be

referable to a suit on the theory that said written contract was Pair's and bound him because, although executed only by Schkade and Caraway, and containing the recital that Pair was not a party thereto, nevertheless, it was Pair's contract executed by his authorized agent, Schkade. Such issues were submitted over Pair's objection, among others, that there was no pleading to support them. There was no such allegation in Caraway's petition. This cause was heretofore before this court on Pair's appeal from an order overruling his plea of privilege. We held that Caraway's controverting affidavit, which included his petition, although confusing, and, in part, seemingly contradictory, was sufficient in the absence of an exception to constitute an allegation that said written contract was Pair's, because executed by his duly authorized agent, Schkade. But, there was no such allegation in the petition on which this case was tried. We have studied the large record carefully and have concluded that it cannot be said that the case was tried by consent on such a theory.

 The recovery for drilling cannot be sustained on the theory, or finding, that Pair was bound by said written contract because he had ratified and adopted it. The written contract and the oral evidence tend to show, if it does not conclusively show, that Schkade, as to the obligation to drill and set the oil string, was an independent contractor and Caraway was his sub-contractor. It indicates that Schkade was employed to do a specific piece of work for Pair and that he employed Caraway as a sub-contractor to perform that job. See Shannon v. Western Indemnity Co., Tex. Com.App., 257 S.W. 522, 524. The written contract recites that Caraway is to do the drilling and setting of the oil string for Schkade and that Schkade is to pay him $2.65 per foot for such work. It recites that Pair is not a party to the contract. Although there is evidence that Pair and Caraway met and talked before Caraway entered into the written contract with Schkade, there is not one word from Caraway tending to show any agreement that Caraway was to do the work for Pair, or that Pair was to pay for it or that Caraway

expected, contrary to the written agreement, that Pair would pay him, or that Pair was to have any authority other than that which is customary in the case of an owner dealing with an independent contractor, or than was customary in the oil business for the owner of the lease to exercise under such circumstances. Pair's testimony rejects the idea of ratification. As to the work covered by the written contract, Schkade testified Caraway was his employee, not Pair's. There is no evidence that Schkade, in employing Caraway, purported to hire him for Pair.

It has been held that there can be "no ratification of a contract which does not purport to bind the person against whom the doctrine of ratification is invoked." 2 Tex.Jur. 482. In O'Connor v. Camp, Tex. Civ.App., 158 S.W. 203, 205 (Writ Ref.), the court said:

"To make a valid ratification of a contract by another party, the contract must purport to be in the name of or for the person ratifying. [Commercial & Agricultural] Bank v. Jones, 18 Tex. 811; Moore v. Powell, 6 Tex.Civ.App. 43, 25 S.W. 472."

In Valaske v. Wirtz, 6 Cir., 106 F.2d 450, 451, 124 A.L.R. 889, 892, the Circuit Court of Appeals said:

"It is well established in the law of agency that an unauthorized act can be ratified only when the act done was accompanied by a profession that it was done as the representative of another."

In the annotation following this case, 124 A.L.R. 893, it is stated:

"The doctrine is well settled that in order that an act or contract may be the subject of ratification by one other than the one who performed the act or entered into the contract, the latter must have, at the time of performing the act or of entering into the contract, professed, represented, purported, assumed, or undertaken to be acting as agent for, or on behalf of, the one alleged to have subsequently ratified the act or contract."

"The doctrine is well recognized that in order that an act or contract may be

the subject of ratification, there must be some relationship, actual or assumed, of principal and agent between the person alleged to have made such act or contract his own and the party by whom the contract was entered into or the act performed. Hence, the act or contract must purport to be done or made at its inception in behalf of the principal; there can be no ratification where it appears that the person who performed the act or made the contract was not at the time, and did not profess to be, acting on behalf of the alleged principal. For example, where an unauthorized purchase is made by an agent in his own name and on his own credit solely, there is no basis for applying the doctrine of ratification when it is sought to hold the principal liable for the price." 2 Am.Jur. p. 177. See also Massachusetts Bonding & Ins. Co. v. Pittsburgh Pipe & Supply Co., Tex. Civ.App., 135 S.W.2d 818, 824 (W.D. C. J.); Lincoln Fire Ins. Co. v. Taylor et ux., Tex.Civ.App., 81 S.W.2d 1059, 1060 (Writ Dis.); Eardley Bros. v. Burt, Tex.Civ.App., 182 S.W. 721, 724.

In Tynan v. Dullnig, Tex.Civ.App., 25 S.W. 465, 466, Judge Fly quoted the following from Mechem on Agency:

"But if the agent, having undertaken to transact the business of his principal, employs a subagent, on his own account, to assist him in what he has undertaken to do, he does so at his own risk, and there is no privity between such subagent and the principal."

The evidence does not justify the conclusion that as to the recovery for drilling and setting the oil string, which was covered by the written contract between Schkade and Caraway, that at the time of performing the acts covered by said contract, or upon entering into the contract, Schkade purported to act as the agent for and on behalf of Pair. The written contract and the oral evidence is to the contrary. There is no pleading that in making the written contract with Caraway that Schkade purported to act as the agent of Pair. On the contrary, the evidence is undisputed that before Pair employed Schkade to drill the five wells

and before Caraway was employed, Schkade had drilled oil wells for Pair; that Pair was pleased with Schkade's knowledge and ability in drilling, and, reposing confidence in him personally, employed Schkade to drill the wells.

■ At most, if there be any evidence, even remotely tending to show a ratification and adoption of the written contract sued on by Pair, it is sufficient to do no more than arouse a mere surmise or suspicion thereof and is insufficient to authorize submission of the question to the jury. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, 1063.

■■ We further conclude that the record conclusively shows that Caraway, in drilling the hole and setting the oil string, contracted solely with Schkade and extended credit to him alone. For this reason, if no other existed, the judgment against Pair for $3,892.85, for drilling the hole at $2.65 per foot, cannot be sustained.

"A person who, upon entering into contractural relations with an agent, has full knowledge of the principal, but extends credit and contracts solely with the agent, cannot thereafter resort to the principal, and the latter is not bound although the agent acted within the scope of his authority and for the benefit of his principal." 3 C.J.S., Agency, § 243, p. 170.

■ The evidence would not justify a finding that, either when the written contract was executed or when the hole was drilled, it was intended that Pair should pay Caraway for the work covered by the written contract. On the contrary, the evidence shows that Caraway was hired by Schkade and the parties intended that Schkade was to pay Caraway the contract price of $2.65 per foot for drilling, while Pair paid Schkade $3.25 for the same drilling.

■ In addition to the recovery for drilling, Caraway recovered a judgment for $1,640 for the value of the work done by Caraway for Pair after the drilling of the hole and setting of the oil string. There is ample evidence that after the hole was drilled and the oil string set, Pair employed Caraway to drill out the cement put into

the hole by Haliburton and to attempt to complete the well. The findings of the jury as to the reasonable value of the services performed and the things furnished is likewise sustained by the evidence.

■ The judgment for Caraway against Pair for $1,640 for doing this latter work is affirmed. The judgment against Pair for the drilling not being sustained and Caraway having "waived" any recovery against Schkade, and it appearing to the court that justice will best be served by a remand of the cause to such extent, said portions of the judgment are reversed and the cause remanded. See Benoit v. Wilson, Tex., 239 S.W.2d 792, 799; Williams v. Safety Casualty Co., 129 Tex. 184, 102 S.W.2d 178.

The judgment is affirmed in part and in part reversed and the cause remanded.